IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PROMETHEAN INSULATION TECHNOLOGY LLC, | § § | |
| Plaintiff, | § § | 2:15-cv-00028-JRG-RSP |
| v. | § § | LEAD CASE |
| REFLECTIX, INC., | § § | |
| Defendant. | § § | JURY TRIAL DEMANDED |
| SOPREMA, INC. (CANADA), ET AL. | § | 2:15-cv-00029 |

**DEFENDANTS' JOINT RESPONSIVE CLAIM CONSTRUCTION BRIEF
AND MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON INDEFINITENESS**

I.      **INTRODUCTION**

Defendants Reflectix, Inc., SOPREMA, Inc. (United States), SOPREMA, Inc. (Canada), and SOPREMA U.S.A., Inc. (collectively "Defendants") submit their Responsive Claim Construction Brief and Motion for Partial Summary Judgment Based on Indefiniteness pursuant to Local Patent Rule 4-5(b) and the Court's Docket Control Order. (Dkt. No. 36). It sets forth Defendants' indefiniteness argument and proposed constructions for disputed claim terms in U.S. Patent No. 8,936,847 (the '847 Patent" or "the patent-in-suit").

The patent-in-suit is generally directed to a reflective insulation material product including a metallized polymeric film. This Court is familiar with the technology of the patent-in-suit having already considered the construction of similar terms for five related patents in *Promethean Insulation Technology LLC v. Sealed Air Corp., et. al*, 2:13-cv-1113-JRG-RSP ("Promethean I").

Claim 1 of the '847 Patent is representative of the asserted claims:

> A reflective insulation product comprising:
>
> a metallized thermoplastic film having a clear lacquer coating on a metallized surface; and
>
> a polymeric material on a side of the metallized thermoplastic film, such that the metallized lacquer-coated surface of the thermoplastic film **is exposed**;
>
> wherein the reflective insulation product is foil-free, has **flexibility for potential wrapping applications**, and is characterized by a flame speed rating value of from 0 to 25 when tested without wire mesh support.

Dependent claim 6 contains the additional term that Defendants believe needs construction:

> The product of claim 1 wherein the polymeric material comprises a multi-layer assembly, the **multi-layer assembly** free of a foam layer.

## II.  INDEFINITE TERM

### A.  The Claims Reciting "Flexibility for Potential Wrapping Applications" Are Indefinite.[1]

| Claim Term | Promethean's Construction | Defendants' Construction |
|---|---|---|
| Claims 1 and 19: "has **flexibility for potential wrapping applications**" Claim 36: "wherein the insulation product is **flexible for potential wrapping applications**" | No construction | This claim term is indefinite. |

35 U.S.C. § 112 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those of skill in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). In other words, if one of skill in the art cannot determine the scope of a claim due to vague language, the claim is invalid under 35 U.S.C. § 112.

A person of skill in the art cannot determine with reasonable certainty when an object has "flexibility for potential wrapping applications." The range of applications for which the product must be flexible enough is unbounded. Promethean states that there are over 900 thousand patents that utilize the term "flexible" or "flexibility." The use of these terms in other patents is wholly irrelevant to whether the terms as used in the asserted claims inform one of skill in the art about the scope of the invention with reasonable certainty. Indeed, Promethean has failed to specifically identify another patent which attributes flexibility to unknown and undefinable "potential" applications as opposed to, for example, defining it in terms of angles, measurements, range of motion and the like.

---

[1] Defendants are no longer asserting indefiniteness arguments for the "clear" and "anti-corrosion" terms.

- 3 -

The independent claims of the '847 patent require that the reflective insulation product be sufficiently flexible for different "potential" end uses that involve wrapping. The specification discusses wrapping of a pipe or water heater, but the inventor chose not to limit the flexibility required by the claim to one of these specific applications. Rather, the inventor chose to claim that the flexibility of the insulation product must comply with some future unknown and undefined "potential" use. Because of this, one of skill in the art is not on notice of the metes and bounds of the claims.

For example, assume that a person of skill in the art wanted to design a product around the present claims and create a reflective insulation product that would be used in straight lines within the walls of a building, and not to wrap a structure. Such a designer could increase the size and density of the bubbles in the bubble pack such that, while still having a modicum of flexibility, it would not be flexible enough to wrap around a water heater (generally 18-24" in diameter) because attempting to wrap that size structure would force the bubbles of the bubble pack to pop thus severely diminishing the performance of the insulation. However, if after 5 years of use of the design-around product, an airplane manufacturer decides to utilize the product to insulate the circular walls of a fuselage of a 757 jet (having ~12' diameter), such use could be a "potential wrapping application" that was at least "potentially" in existence since the creation of the design around product. As this scenario demonstrates, a person of skill in the art cannot know the scope of the claims because it cannot be ascertained what "potential" uses may be available. Therefore, the claims fail to inform those of skill in the art about the scope of the invention with reasonable certainty.

In the prosecution history, Promethean conceded that the term "potential flexibility for wrapping applications" was indefinite. *See* Ex. A, Response to Office Action Mailed January 15,

2014. This concession is significant because just as requiring a product be "potentially flexible for wrapping applications" provides for a claimed product to have an undefined degree of required flexibility, similarly, the description "flexible for potential wrapping applications" also provides for a claimed product to have an undefined degree of required flexibility. Even if as Promethean argues, the claim language indicates the insulation product "definitely has flexibility," because the degree of flexibility required by the claims cannot be ascertained, the claims fail to provide adequate notice to a person of skill in the art as to how to avoid infringing the claim. Therefore, the terms "**flexibility for potential wrapping applications**" and "wherein the insulation product is **flexible for potential wrapping applications"** render claims 1, 19, and 36 indefinite.

## III. CLAIM TERMS AT ISSUE

Defendants below address Promethean's proposed constructions for the disputed claim terms.[2]

### A. *Multi-Layer Assembly*

| Claim Term | Promethean's Construction | Defendants' Construction |
|---|---|---|
| multi-layer assembly | No construction | A multilayer assembly is an insulation ~~structure~~ material ~~having multiple~~ comprising a plurality of thermoplastic layers[3] |

The term "multi-layer assembly" needs to be defined in order to eliminate the confusion that would otherwise exist between this term and the term bubble pack assembly. A multi-layer assembly is a broad term that can encompass a bubble pack assembly. The proposed construction clarifies this point.

---

[2] Defendants are willing to agree to Promethean's proposal that the terms "tested without wire mesh support" and "a form layer" do not need to be construed by the Court.

[3] Defendants have amended their proposed construction of the term.

Defendants' construction is consistent with the intrinsic evidence. The term multi-layer assembly is never used in the detailed description in the '847 patent, however, in the summary section, it is stated that the polymeric insulation material (*i.e.* the material that provides for the insulating structure) is metallized, and that the polymeric material can comprise a "multi-film layers assembly." Col. 5 lines 23-27. The summary further states that "the multi-film layers may comprise a plurality of thermoplastic films." Col. 7 lines 53-54. Thus it is clear that the patent teaches an insulation material that is composed of multiple thermoplastic layers.

When discussing a bubble pack assembly, the '847 patent also describes a plurality of thermoplastic films. Col. 6 lines 53-57. Specifically, a bubble pack has a first thermoplastic film having portions that define cavities, and a second thermoplastic film that seals the cavities to form closed cavities. *Id*. For instance, in the detailed description, and in every figure of the '847 patent, the polymeric insulation structure is formed with a plurality of thermoplastic films in this bubbled formation (*see e.g*. Fig 3 below).



In the illustrated figure, layer 16 is a polymeric (polyethylene) film layer, layer 18 is a second polyethylene layer, and layer 22 is a polyethylene film. Col. 9 lines. 36-45. This is an example of a "multi-layer assembly."

In sum, Defendants' construction of "multi-layer assembly" should be adopted to minimize the risk of confusion to a jury and because of the potential conflicting arguments that could arise surrounding this term.

### B.     "Exposed and "Is Exposed" Terms

The parties' proposed constructions for the word "exposed" and the phrase "is exposed" (collectively referred to herein as the "exposed" terms") are reproduced below.

| CLAIM TERM | PLAINTIFF'S CONSTRUCTION | DEFENDANTS' REVISED CONSTRUCTION[4] |
|---|---|---|
| "such that the metallized lacquer-coated surface of the thermoplastic film **is exposed**" (Claims 1, 56, 57, 60, 66)<br><br>"…**exposed** lacquer-coated surface…" (Claim 16, 17)<br>"…on a side of the polymeric material with the lacquer coating **exposed**" (Claim 19, 36) | A reflective metallized layer with the lacquer coating positioned external to the insulation product such that the reflective metallized layer faces away from the insulation product. | A reflective metallized layer with the lacquer coating positioned externally to the ~~insulation~~ polymeric material such that the reflective metallized layer faces away from the ~~insulation~~ polymeric material. |

The dispute for these terms is straightforward. Defendants' construction properly specifies that the metallized lacquer-coated surface of the thermoplastic film is positioned external *relative to the polymeric material*—another recited subcomponent of the claimed reflective insulation product. In contrast, Plaintiff's construction incorrectly specifies that the metallized lacquer-coated surface of the thermoplastic film is positioned external *relative to the reflective insulation product*.

---

[4] In its Opening Claim Construction Brief (ECF 44), Promethean argued that Defendants proposed construction was improper since the construction made reference to "insulation material." To address Plaintiff's concerns, Defendants have revised its proposed construction to align it verbatim with the claim language, replacing the reference to the "insulation material" with the recited "polymeric material."

- 7 -

Plaintiff's proposed construction of the "exposed" terms is contrary to the plain language of the claims and defies common sense, as it is physically impossible for the thermoplastic film's metallized surface to be positioned external to the reflective insulation product when the thermoplastic film itself is part of the reflective insulation product. Instead, the clear and unambiguous language of the asserted claims indicates that the metallized surface of the thermoplastic film is positioned externally *relative to the polymeric material* (e.g., a bubble pack assembly) in order to provide the reflective insulation product with a reflective outer surface. Therefore, the "exposed" terms should be construed to mean "**a reflective metallized layer with the lacquer coating positioned externally to the polymeric material such that the reflective metallized layer faces away from the polymeric material**."

## IV.   CONCLUSION

For these reasons, Defendants respectfully request that the Court find the claims in Section II indefinite pursuant to the motion for partial summary judgment contained herein, and that the Court adopt Defendants' constructions for the remainder of the terms in Section III.

JONES WALKER LLP

Date: October 20, 2015

/s/ Michael K. Leachman
Jeffrey J. Phillips, Texas Bar No. 24037279
1001 Fannin Street, Suite 2450
Houston, Texas 77002
Tel.: 713-437-1800
Fax: 713-437-1928
Email: jphillips@joneswalker.com

Robert L. Waddell (*Pro Hac Vice*)
Donald W. Washington, Texas Bar No. 20897167
Blair B. Suire (*Pro Hac Vice*)
600 Jefferson Street, Suite 1600
Lafayette, Louisiana 70501
Tel.: 337-593-7600
Fax: 337-593-7601
Email: rwaddell@joneswalker.com
       dwashington@joneswalker.com
       bsuire@joneswalker.com

Michael K. Leachman (*Pro Hac Vice*)
Justin J. Marocco (*Pro Hac Vice*)
8555 United Plaza Boulevard
Baton Rouge, Louisiana 70809
Tel.: 225-248-2420
Fax: 225-248-3120
Email: mleachman@joneswalker.com
       jmarocco@joneswalker.com

ATTORNEYS FOR DEFENDANTS,
SOPREMA, INC. (CANADA), SOPREMA,
INC. (UNITED STATES), AND
SOPREMA U.S.A., INC.

|  |  |
|---|---|
|  | NORTON ROSE FULBRIGHT US LLP |
| Dated:  October 20, 2015 | /s/ Brett C. Govett<br>Brett C. Govett<br>State Bar No. 08235900<br>James V. Leito IV<br>State Bar No. 24074512<br>2200 Ross Avenue, Suite 3600<br>Dallas, Texas 75201-2784<br>Tel.:    214-855-8000<br>Fax:    214-855-8200<br>Email: brett.govett@nortonrosefulbright.com<br>           james.leito@nortonrosefulbright.com<br><br>Marwan Elrakabawy<br>State Bar No. 24055447<br>98 San Jacinto Blvd., Suite 1100<br>Austin, TX 78701<br>Tel: (512) 474-5201<br>Fax: (512) 536-4598<br>Email: marwan.elrakabawy@nortonrosefulbright.com<br><br>ATTORNEYS FOR DEFENDANT,<br>REFLECTIX, INC. |

**CERTIFICATE OF SERVICE**

I certify that this document was served by electronic mail on all counsel of record on October 20, 2015.


/s/ Brett C. Govett
Brett C. Govett